IN RE GEORGE C. LOOMIS ET AL.

FILED MAY 21, 1909.  No. 16,168.

1. Stolen Goods, Receiving or Buying. "In this state the receiving or buying of stolen goods, with intent to defraud the owner, is not an accessory, but a substantive, offense, and a conviction may be had without regard to the person who stole the goods, or from whom they were received." *Levi v. State*, 14 Neb. 1.

2. ———: INFORMATION. The charge of buying stolen horses in this state, knowing the same to have been stolen, with intent by such buying to defraud the owner, states an offense, even though the charge further recites that the horses were stolen in South Dakota.

ORIGINAL application for writ of habeas corpus. *Writ denied.*

*Sullivan & Squires,* for petitioner.

*William T. Thompson, Attorney General, George. W. Ayres, John Tucker* and *Wolcott & Morning, contra.*

LETTON, J.

This is an original application for a writ of habeas corpus. The parties in whose behalf the writ is applied

for were informed against in the district court for Cherry county on the charge of buying and receiving stolen horses, which had been stolen in the state of South Dakota, knowing them to have been stolen, and with the intent to defraud the owners. A demurrer was filed to the information, which was overruled by the district court. Pending further proceedings, this application was made upon the ground that the information and warrant upon which the prisoners are held are each void, for the reason that no offense against the laws of the state of Nebraska is charged.

It is contended that, since in this state, under the rule announced in *People v. Loughridge,* 1 Neb. 11, it is no crime to bring into the state property stolen in another state, it can be no crime to receive such property; that, since an act which may constitute the crime of larceny in this state may not be a crime in South Dakota, the courts of this state cannot try such question; that offenses against the laws of a sister state cannot be examined into or punished in this state; that, since, in order to commit the offense of horse stealing with which section 117 of the criminal code is mainly concerned, the horses must have been stolen in this state, the offenses of bringing stolen property, concealing the thief and concealing the animal, depending thereon and covered by the same section of the code, cannot be committed if the property was stolen outside of the state. By 3 and 4 W. and M. (Eng.) ch. 9, if a person received stolen property from the thief, knowing the same to have been stolen and with the intent to assist the thief in depriving the owner of his property, he is an accessory to the larceny. 1 Hale's Pleas of the Crown (Eng.), 618. Following this statute, in a number of states the offense is deemed to be accessorial in its nature. In *Engster v. State,* 11 Neb. 539, it was determined that this offense is a substantive crime in this state, and not accessorial, and that conviction may be had without regard to the person who stole the goods or from whom they were received. This case was followed in

*Levi v. State,* 14 Neb. 1, and *Ream v. State,* 52 Neb. 727. In the latter case it was contended that it was necessary for the state to allege and prove the conviction of the person by whom the property was originally stolen, but the court say: "That such was the rule under the former practice may be conceded, since one guilty of receiving and concealing stolen property is, at common law, treated as an accessory after the fact. But in this state the offense charged is an independent substantive crime, and the conviction of one charged therewith is in nowise dependent upon the prosecution of the original thief." There are two lines of authority upon the question of whether, in the absence of a statute, it is larceny to bring stolen property into another state than that in which the property was stolen. So far as this state is concerned, this question was settled at a very early period in the case of *People v. Loughridge,* 1 Neb. 11, in which it was held that the bringing into this state by the thief of goods stolen in another state is not larceny. This case was followed recently in *Van Buren v. State,* 65 Neb. 223. An interesting presentation of the arguments pro and con and the holdings of the several courts is to be found in 1 Bishop, New Criminal Law (8th ed.), secs. 140, 141. In this state, therefore, it is settled that it is not a crime to bring stolen property into the state, and that the offense of receiving stolen property is an independent substantive offense with no element of an accessorial nature.

The plaintiff contends, and a number of text-book writers upon this branch of the law seem to agree with him (12 Cyc. 210; 2 Bishop, New Criminal Law (8th ed.), sec. 1142*a*; Clark and Marshall, Law of Crimes (2d ed.), sec. 503), that it is not a crime to receive stolen property in a state other than that in which it was stolen, unless the laws of the state in which the property is received make it a crime to bring stolen property into the state. This is the English rule. *Regina v. Carr,* 15 Cox C. C. (Eng.) 129; *Regina v. DeBruiel,* 11 Cox C. C. (Eng.) 207. A contrary view is taken by Judge McLain,

1 Criminal Law sec. 720, wherein he says: "It has been held in England that if the goods were stolen outside of the kingdom there could not be a guilty receiving of them in the kingdom. In this country it has been held that it is immaterial that the goods were stolen outside of the state, and there is sometimes a statutory provision to that effect. The venue of the offense, if deemed a substantive one, is in the county where the goods are received; but, if it is accessorial in its character by the statute, the venue is where the goods were stolen." See, also, *Beal v. State*, 15 Ind. 378; *State v. Crawford*, 39 S. Car. 343; *Licette v. State*, 75 Ga. 253; *State v. Stimpson*, 45 Me. 608. The arguments of the applicant in this case are identical with those used in a case where it has been sought to convict one of larceny when he brings stolen property into a state where there is no statute making such an act an offense against the latter state. There seems to be no doubt that, where a statute makes bringing stolen property into the state a substantive crime against that state, such laws are constitutional and may be enforced. *People v. Williams*, 24 Mich. 156. The states of Michigan, New York, Illinois, Alabama and Mississippi have such statutes. In this state it was said by HOLCOMB, J., in *Van Buren v. State, supra:* "That the legislature may declare the bringing into this state property stolen in another an offense, and provide suitable punishment therefor, is abundantly supported by the authorities, but this phase of the subject is not before us." While this remark is *dictum*, still it indicates that the mind of the court does not run counter to the decisions of those states in which such a statute has been enacted and tested.

Under such statutes the first requisite to a conviction is that the property must be identified as belonging to the class of stolen property. It is the bringing of such property into the state that is made a crime. Now, it is no more difficult to identify stolen property in the case of a prosecution for receiving the same, knowingly and fraudulently, than in a prosecution for bringing such property

into the state.  The right of the receiving state to punish, and the manner and quantum of proof that the property falls within the prohibited class, must necessarily be the same.  If a statute may be enforced which punishes the bringing of stolen property within the borders of the state, it is difficult to see why a statute making the buying or receiving of such stolen property a crime may not also be enforced.  The inquiry is the same in both cases.  In the one case, is the property which is brought into the state "stolen property"?  In the other, is the property pur- chased "stolen property"?  We are unable to see any ground for distinction.  If the statute makes it a crime to bring stolen property into the state, the bringing into the state is considered as a substantive offense committed against the receiving state.  It is not an offense against the laws of the state where the property was stolen, and its prosecution is not, as is argued, an attempt to punish for an infraction of the laws of that state.  There is no better nor more logical reason for holding that a convic- tion may be had in the one case than in the other.

The act of the legislature in either case is not obnoxious to the rule that one state will not admininister the penal laws of another, for the act denounced is one committed within the state, though the property received its taint outside of its bounds.  What the legislature sought to pre- vent was the trade and commerce in stolen goods in this state.  It had the right to make it a crime to receive goods of this character with the intent to defraud the owner, and this is the gist of the offense.  It is immaterial that the owner may reside in another state.  The prisoners are not charged with the infraction of the laws of South Dakota, but with the infraction of the laws of this state. It may or may not be necessary for the prosecution in its effort to establish the class to which the goods are al- leged to belong to show that their original taking was in violation of the laws of South Dakota (*People v. Staples,* 91 Cal. 23; *Barclay v. United States,* 11 Okla. 503); but,

however this may be, it does not alter the fact that the offense described in the statute is one committed against the laws of this state.

Whatever may be the rule which is applicable in·England under the peculiar conditions surrounding that "tight little island," the conditions existing along the northern and western boundaries of this state are such as require a common-sense interpretation of the statute. If we should construe the law as the relator contends, the effect would be to make possible a flourishing industry in receiving stolen horses and cattle in what is known as "the cattle country" in the western portion of this state, and·to foster and build up the pernicious practices which the statute is intended to prevent. If the charge in this case is substantiated by the proof, a more striking illustration of the consequences liable to ensue could not well be had. The prisoners are charged with unlawfully buying and receiving 13 horses and mares with the intent to defraud the respective owners, well knowing all the property to have been stolen in South Dakota. The profit of such a commerce may be large, as this charge indicates.

It seems clear to us that stolen property is stolen property, wherever it may have acquired that distinctive character, and wherever it may be found, and that, where the receiving of it with the intent to defraud the owner is made a substantive crime, the locality of the theft or the personality of the thief is not material. The material questions are: does it belong to that class of property the buying of which is condemned by the statute? and was it bought with criminal knowledge and intent? If so, the buying with such knowledge and unlawful intent violates the statute.

For these reasons, we are of the opinion that the information charges an offense against the laws of this state, and that the prisoners are not unlawfully restrained of their liberty. The writ is

DENIED.

FAWCETT, J., not sitting.